# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Oliver Woodfin Proffitt

v.

Ronald Angelone,
Director, Virginia
Department of Corrections

November 12, 2003

Case No. CL02-2

BY JUDGE S. BERNARD GOODWYN

The petitioner, Oliver Woodfin Proffitt ("Proffitt"), has filed a petition for writ of habeas corpus, and has moved the Court for an evidentiary hearing. The respondent, Ronald J. Angelone, Director, Virginia Department of Corrections, has filed a motion to dismiss. This opinion addresses the Motion To Dismiss.

I. In deciding the pending motion, the Court will accept as true the factual assertions contained in the petitioner's pleadings and the affidavits attached thereto. In determining the motion to dismiss, the Court accepts as true all facts alleged in the petition. Therefore, there is no need for an evidentiary hearing at this stage of the case. The Court will also consider, and make a part of the record of this proceeding, the transcripts from the underlying criminal matters and, more specifically, the transcript of the August 9, 1999, hearing when the petitioner entered his guilty pleas and was questioned by the Court.

On August 9, 1999, the petitioner was before this court charged with first degree murder (CR99-1364), use of a firearm in the commission of the murder (CR99-1365), armed burglary (CR99-1366), and use of a firearm in the commission of burglary (CR99-1847). Attorney Richard Brydges represented the petitioner as well as petitioner's son, Randolph Proffitt ("Randolph"), who was a co-defendant. The two were to be tried together, defendants' objections to the joinder having previously been overruled. (6-

8-99 transcript, p. 35.) On the day of the trial, the Commonwealth offered plea agreements to Proffitt and Randolph, but made it clear that, if both defendants did not accept the plea agreements, both plea agreements would be withdrawn. (Petition, ¶ 27.)

The Commonwealth claimed to have four eye witnesses who would testify that they saw Proffitt chase and shoot the victim, as the victim tried to flee. (8-9-99 transcript, pp. 23, 28-29.) Proffitt's position was that his shooting of the victim had been an accident. (8-9-99 transcript, p. 42.) However, the only witness to the incident, who might have substantiated Proffitt's position, lived in North Carolina and had an outstanding warrant against him in Chesapeake. (Petitioner's Response to Motion To Dismiss, ¶ 38, and Exhibit B, Affidavit of Tina York, ¶ 5.) That witness was not present for the trial, and no other witnesses had been identified by the defendants or subpoenaed to testify at trial on their behalf. (Petition, ¶ 29.)

Randolph wanted to accept the plea agreement offered to him. (Petitioner's Response to Motion To Dismiss, ¶ 16, and Exhibit A, Affidavit of Randolph Proffitt, ¶¶ 9, 14.) Randolph emphatically declared he was not going to trial under any circumstances because he did not want to be tried with his father, in light of his father's acts and reputation. (Petition, ¶ 27; Petitioner's Response to Motion To Dismiss, ¶ 16, and Exhibit A, Affidavit of Randolph Proffitt, ¶¶ 9, 14.)

With the guidance and advice of his counsel, Proffitt accepted the plea agreement which was offered to him. (Petition, ¶ 27.) This allowed Randolph to accept the plea agreement offered to him. The plea agreement accepted by Proffitt called for the first degree murder charge against him to be reduced to a second degree murder charge and for Proffitt to plead guilty to that second degree murder charge, and to a charge of use of a firearm in the commission of that felony. The Commonwealth agreed to *nolle prosequi* the armed robbery, and use of a firearm in the commission of armed robbery charges against Proffitt. There was no agreement concerning the sentence which Proffitt was to receive for the crimes to which he pleaded guilty.

Pursuant to the plea agreement, Proffitt pleaded guilty to second degree murder and use of a firearm in the commission of that felony. (8-9-01 transcript, pp. 3-4.) After pleading guilty, the petitioner was placed under oath and questioned by the Court. The defendant swore to the Court that he was entering his plea of guilty freely and voluntarily and that he understood that, by pleading guilty, he was waiving his right to a trial by jury. (8-9-99 transcript, pp. 8-9.) He swore that he was completely satisfied with the services of his attorney. (8-9-99 transcript, p. 11.) He stated that he understood that the maximum period of imprisonment that the Court could impose on the second degree murder charge and the firearm charge was a total of 43 years. (8-9-99 transcript, p. 11.) At the conclusion of the statement of the evidence by the Commonwealth and the Defense, the petitioner was again asked by the Court whether he was pleading guilty because he was in

fact guilty, and he again stated that he was. (8-9-99 transcript, pp. 46-47.) The trial Court found that the petitioner's pleas of guilty had been entered into freely, intelligently, and voluntarily. (8-9-99 transcript, p. 13.)

Proffitt alleges that a conflict of interest existed because, on the day of the trial, Randolph did not want to go forward with the trial and the only way Randolph could get the plea agreement that Randolph wanted was if Proffitt accepted the plea agreement which had been presented to Proffitt. Proffitt states that he did not want to give up his right to a trial by jury on the four felony charges he faced and that he accepted the plea agreement only because of the advice of his counsel who labored under a conflict of interest between Proffitt and Randolph. Thus, he argues, he was convicted in violation of his right to effective counsel under the Sixth Amendment of the Constitution of the United States of America.

II. The petitioner collaterally attacks, by way of a petition for writ of habeas corpus, the guilty pleas he entered on August 9, 1999. In essence, Proffitt alleges that his counsel, laboring under a conflict of interest, acted adversely to Proffitt's interests by urging him to accept a plea agreement rather than proceed to a trial by jury.

After pleading guilty, upon questioning by the Court, under oath, Proffitt stated that he was satisfied with the services of his attorney. (8-9-99 transcript, p. 11.) He also stated that he was, in fact, guilty of the crimes he pleaded guilty to, and that he understood that by pleading guilty, he was giving up his right to a trial by jury. (8-9-99 transcript, pp. 8-9.) The trial judge who questioned Proffitt about his guilty pleas found those pleas to have been made freely and voluntarily.

At the threshold, the question is whether a convict, under the circumstances of this case, will be permitted to repudiate the representations made at his trial and, in a collateral proceeding, allege and seek to prove inadequate assistance of counsel, rendering his guilty plea involuntary by presenting a set of facts directly contrary to his earlier statements made in open court. *Anderson v. Warden*, 222 Va. 511, 515, 281 S.E.2d 885 (1981). The petitioner alleges that his attorney was laboring under an actual conflict of interest when he advised the petitioner to accept the plea agreement which was offered to him. Proffitt alleges that he wanted a jury trial and that he gave up that right to a jury trial upon the advice of his counsel. However, under oath, he told the Court that he was entering into his plea of guilty freely and voluntarily, that he understood he was giving up his right to trial by jury by pleading guilty, and that he was in fact guilty of the crimes charged. In his petition, Proffitt alleges no facts which were not known to him at the time he decided to accept the plea agreement, other than the sentence he was eventually given by the Court. If Proffitt was dissatisfied with his counsel and truly wanted a trial by jury, he should not have lied to the Court when it inquired concerning those matters. Proffitt has provided

no rationale which would support the Court allowing him to repudiate his sworn representations to the Court.

Viewing the facts alleged in the light most favorable to the petitioner, Proffitt's allegations are insufficient to establish a valid reason for repudiation of his trial statements in the face of the circuit court's finding of voluntariness, which is supported by the trial record. Because the allegations in the petition do not set forth a valid reason for the petitioner to repudiate his satisfaction with his attorney, his admission of guilt, and his knowing waiver of trial by jury, the motion to dismiss is granted, and Proffitt's petition for writ of habeas corpus is denied.

III. Assuming *arguendo* that Proffitt were allowed to repudiate his prior statements under oath, he still would not be entitled to the relief he seeks. Proffitt alleges that his counsel had an actual conflict of interest, which deprived Proffitt of his Sixth Amendment right to effective assistance of counsel. Although a defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel, this right is not accorded for its own sake, but because of the effect a conflict of interest might have on the ability of the accused to receive a fair trial. *United States v. Cronic*, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). The United States Supreme Court has held that an actual conflict of interest must be accompanied by adverse performance before prejudice will be presumed. *Mickens v. Taylor*, 535 U.S. 162, 173-74, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002). To prevail on this claim, the petitioner must establish an actual conflict of interest and that the conflict of interest adversely affected his counsel's performance. *Mickens*, 535 U.S. at 173-74 (2002).

It is alleged that the actual conflict of interest manifested itself during the plea negotiation process on the day of trial. (Petitioner's Response to Motion To Dismiss, ¶ 31.) Petitioner alleges that on the day of trial a very real and substantial conflict existed because Randolph could only get the plea agreement he wanted if Proffitt would accept the plea agreement offered to him, and give up his right to a jury trial on the four felony counts with which Proffitt was charged. (Petitioner's Response to Motion To Dismiss, ¶ 14.) Petitioner alleges that he wanted to go to trial, but his attorney actively persuaded him no to do so. (Petitioner's Response to Motion To Dismiss, ¶ 16.) Assuming, without finding, that an actual conflict of interest existed in Brydges representing both Randolph and Proffitt, Proffitt must show that the conflict adversely affected Brydges' performance. Only if the petitioner can establish some causal link between the actual conflict of interest and the impaired representation is he entitled to collateral relief. LaFave & Israel, *Criminal Procedure*, § 11.9, pp. 38-39 (Supp. 1991).

The alleged impaired representation is counsel's advice to the petitioner to accept the plea agreement. Petitioner alleges his counsel persuaded him to take the plea agreement for the sole reason of allowing Randolph to

accept the plea agreement presented to Randolph, and that getting Proffitt to accept the plea agreement was adverse to Proffitt's interests. The plea agreement accepted by Proffitt resulted in two felony charges being dropped (one of which carried with it a potential sentence of life imprisonment), and a third charge being reduced from first to second degree murder (thus avoiding another potential life sentence). The petitioner admits he had no witnesses present to testify on his behalf when he accepted the plea agreement on the morning of his trial. The only witness identified by Proffitt as being necessary for trial was, according to an affidavit submitted on Proffitt's behalf, a resident of North Carolina who was a fugitive from justice in Virginia. The petitioner does not dispute that the Commonwealth had several witnesses prepared to testify at the trial to evidence which, if believed by a jury, would be sufficient to find the defendant guilty of first degree murder.

Reviewing all the evidence in the light most favorable to petitioner, the Court finds that the petitioner has failed to allege facts to support the conclusion that the representation given to him was impaired, or that the advice given to him by his counsel was tainted by improper motivation. There is no evidence that the potential conflict had any adverse effect on counsel's performance. Proffitt's Counsel had two of four felony charges dismissed and a third reduced, where Proffitt was facing a jury in a jurisdiction where, according to the affidavits Proffitt submitted in support of his petition, Proffitt's own son, assessing the prospects for trial objectively, decided that he would not under any circumstances be tried by a jury with his father because of Proffitt's acts and reputation in the community. Proffitt had no independent witnesses to support his theory of the case, and the Commonwealth had several eye witnesses whose testimony would be adverse to Proffitt and sufficient to place him in prison for life. The Court finds, as a matter of law, that advising Proffitt to take the plea agreement, under the circumstances alleged by Proffitt, does not constitute impaired representation. Thus, Proffitt's petition for writ of habeas corpus must be dismissed.